Thomas Hester for Mr. Houff, who is convicted of sex abuse based on hearsay, which I contend was a violation of his Sixth Amendment confrontation rights. This is an unusual case in that that hearsay ends up coming to court through two distorting lenses, the mother who is the sole person who hears it, and some very questionable Vietnamese interpretation. Those can just be set aside because look in just the circumstances of E.P.'s statement, report-of-statement. It fails to provide the indicia of reliability required under the Confrontation Clause. Before turning to sort of the factual indicia there, I want to briefly address the ADPA issues and deference in this case. Under 2254d, no deference ends up being due. The last reasoned decision of the State Court was the trial judge's court. And we look through to the trial court judge's decision. Correct. And there's no deference due to that because it was contrary to particularly Idaho v. Wright, but really also Roberts v. Ohio. So the reason that the trial judge's decision was contrary to the other two is because you argue that he relied too heavily on the corroborative evidence in making his determination. Yes. Wright is very clear. You don't look at corroboration that it provides for bootstrapping. And in this instance, actually, there are two big pieces of corroboration that he begins with, the photographs, and I'll come to that in just a minute. Didn't the trial judge, though, have to look at the corroborative evidence under the particular hearsay exception that was advocated and applied here? Yes. As I understand it, the first two prongs of that hearsay exception kind of capture the Idaho v. Wright considerations, look at the circumstances of the making of the statement, and make a determination of whether it's trustworthy and reliable. But then it goes on to say, and, and, in addition to having made that, there has to be corroboration of the perpetrator's opportunity to commit the crime and something else. So it seemed like corroboration was in play for the trial judge, and it was incumbent on the trial judge in applying that section to hum a few bars about corroboration, too. Well, and he certainly does that. And you're correct. It is a part of the State evidentiary hearsay rule. However, it is also improper to consider it under confrontation. And there's not much in the trial court that's talked about confrontation at the end. Well, there's not much in the objection put to the trial court that talked about confrontation. Was there anything put to the trial court that caused him to look at anything other than the evidence code? Well, the trial court concludes by saying that the only objection made to him is the evidence code, so I'm not sure why he's expected to speak in a different tongue if the question, if the objection is under the evidence code, I'd kind of expect him to answer under the evidence code. And, I mean, there is sort of an underlying procedural default issue here, which is really a non-issue. And let me try to deal with that. I want you to get to that at some point, but here I'm really focusing much more directly. We're trying to parse what the trial judge says, and your objection to the trial judge's ruling is that it doesn't follow right, but he's not trying to follow right in what he says. He's dealing with an objection under the evidence code, and I would expect him to say exactly what he says in order to comply with the evidence code, so I don't know how you can discern from this that he's made a ruling that's contrary to Idaho v. Wright. That's not what he was talking about at the time. Well, at the conclusion of his ruling, and this is page 289 of the excerpt of record, he states the statement possesses an issue of reliability sufficient to satisfy the constitutional requirements and it will be received. That's after doing the statutory analysis. So he is cognizant, and he's talking about an issue of reliability that there are real buzzwords of the constitutional analysis under Wright. So I — there is no parsing in his analytical descriptions of corroboration not for the constitutional part. And if you look, he begins, number one, with corroboration, talking about the photos, first saying they're 80 percent corroborative and then, well, really 100 percent. Then the prosecutor goes through a lot of argument about the physical damage to the girl's vaginal area, what's called a gaping, which he also cites as corroboration at this instance. Ultimately, in his verdict, because it's a court trial, he puts that aside. He finds not guilty on the rape charge, which involves that, and finds that it's more likely than not that that was caused by something else, or at least it's not proven to his standard that it was. So I do submit that that takes us out of AEDPEG deference. With regard to the State's arguments about factual deference, this Court, in Bakhting on Remand and in Swan, has noted that it's a mixed kind of a fact-law question, and I don't think you have deference issues there. But let me jump now to the merits, if I may. I think it's important, and I alluded to the photos. I know the Court's familiar with them. But I think it's useful analytically to look at how this allegation comes about. First, these photographs of the young girl, who's 3, I think, at the time, 4, by the time of the statements or disclosure, including nude statements. And it's clear, ultimately, that Mr. Huff took those photographs and ultimately admits that. So the producing sort of pornography charges aren't at issue. But the police find those, they figure out who it is, and they go to the mother. As soon as the detective talks to the mother, she immediately says, what else happened? She thinks something else happened. He says, well, we hope not. So that's where we go. From there, the mother ends up talking to the child. The mother's the only person who hears or to whom these statements are made. And I just want to read to you a snippet from her direct examination. This ends up being a trial testimony, too. The detective says, yes, or the prosecutor says, yes, the first time when I tried to ask her, she wouldn't talk to me. She just lied. And then, later, she told me. So she's repeatedly asking her, how would you describe that conversation, the mother? I was very upset. She knew that. I said, well, please tell me the truth. I'm so upset. You wouldn't tell me the truth. I'm your mother. You don't have to worry. If you don't tell me the truth, I will suicide. I will try to kill me. She's saying, no, mommy. Don't. Don't kill yourself. I will tell you the truth. I mean, it is the facts are quite chilling in terms of the lack of indiscriminate response. Let me, you know, I realize this was only set for, we're going to set for 10 minutes. But, and I'll give you some extra time because there are a lot of issues here. But one thing that interests me, let's assume that the district court, the trial court judge's decision was contrary to right. And then maybe you can show that there's an unreasonable application of right. What about Brett and Harmless Heir? I don't, I mean, anything. What do these, you know, he was, he was, he was convicted of several other counts as well. And this is only going to the abuse counts. Is that correct? Yes. We're only talking about the sex abuse counts. And that's where like Bakhtin, for instance, talks about this corroboration stuff. It might be proper for harmless error analysis, but it doesn't belong. So, so let me speak to that because really the only corroboration that's ultimately credited by the court is the fact of these photos. It is the fact of the photos that elicit the very, I would argue, unreliable accusation to the mother. The photos show that he had certainly an interest and he had an opportunity. He had an interest in photos of, or seeing this young girl. That was supported also by the people, because they were neighbors in the apartment next door. But that is quite different in the sentencing phase. There's some, some real discussion about, some scholarship about the difference between an interest in sort of looking and actually doing and abusing. But, but there is that evidence. The physical evidence from the cares, so the evaluation medically of the, the gaping area around her vagina, ultimately if you look at the court's ruling, because it's a court trial, the judge's ruling, he says that, you know, he's concluded beyond at least, it's more likely than not, that the statement she made that suggested contact was about anal contact and an attempt at anal penetration, not vaginal. And he acquits Mr. Huff on the, the rape charge that was indicted by the grand jury. So I don't think you have corroboration there, given the fact finding that, that this court is bound by, by the trial judge. Wasn't there some other statement, though, that she, that the, that was made, the young girl made to one of the cares? I think I know what you're talking about. There's a statement during the cares interview, they end up taking a photograph of her. Right. And when she hears the camera click, she says, that's like what the man did. Now, there's threads, I think, of argument that, because they're at that time, actually, I guess, physically sort of spreading her and taking a photograph of, of the area and the gaping. So there's a suggestion made by the prosecutor in the argument to the court that that means that that's what he was doing. She said that's what he was doing. It's very clear, I think, if you read it, and if you read the judge's findings about this, that her statement, that's what he was doing, was the camera. And there's even some questions by the detective about saying, I think, say cheese or something like that. So, I mean, that corroborates that he took a photograph. It doesn't corroborate any contact, and indeed, so, so I don't believe so. Do we know that the trial judge understood it that way? Because one, I looked at that exchange, and one inference that could be drawn, because they're manipulating her vagina at the time, she says, that's what the man did. One inference is that the man touched me there in that manner. But did the trial judge make an explicit finding that when she said that's what the man did, she was referring strictly to taking a picture as opposed to touching her? He doesn't make that explicit a finding. But I think if you read the rulings, and I believe it's the initial ruling on the hearsay evidence, he is, I think it strongly suggests that he is hearing it as I described. And if you go back and review the testimony, that is what it means. I mean, there's also the case that there aren't any photographs in evidence of, you know, a hand touching her there. Obviously, there wouldn't be an issue about sex abuse if that were the case. So I think that absence also speaks to this. In reviewing Wright last night, there are four not sort of illustrative factors that the Court cites that come up in child sex abuse cases, and they talk about spontaneity and consistency, the mental state of the declarant terminology, you'd expect a child of that age to use, and the lack of motive to fabricate. And I think that framework is useful on these facts. Clearly, it's not a spontaneous statement. It's made after she's repeatedly denied to her mom that it happens. In terms of consistency, there's the trial, there's inconsistency about whether it's, you know, anal or vaginal. There's inconsistency in the terminology, and you don't know how much this is through the lens of the mother, but at one point she's saying my daughter uses jeer to mean vagina. At another point, it's cue. These are Vietnamese words. So there's marked inconsistencies that also go to the terminology. In terms of the lack of motive to fabricate or the mental state of the declarant, clearly, the mother threatening suicide is, of course, amazingly coercive. The trial judge specifically does find that. The child was clearly under substantial coercion. The mother's tremendous pressure. This is at 273 of the record there. She also makes promises, I'll buy you clothes. I mean, it's quite remarkable, really. And so you have the cares workers that don't choose not to interview her because of sort of the contaminations that's happened. There's a use of leading questions. Let me ask you this. What's the end result if he were to prevail? The other convictions. As a result of the other convictions, Mr. Huff was found to be a what's it called? A dangerous offender. A dangerous offender. And that really had an impact on his sentence. Yes. It was used on the photographic counts. Was it the abuse convictions? I don't think related. It got in greater supervision. But how does it? Right. He got consecutive 75-month sentences on the abuse counts. He got an indeterminate 30-year sentence for taking the pictures. Nuance-wise, that's because that is an A felony and they needed an A felony because he didn't have the priors under the statute. But in any event, in terms of the practical effect, I think ruling here, and this is why we argued sufficiency in the district court, it knocks out the two sex abuse counts. Right. In terms of the sentence, he had to serve those. The dangerous offender sentence in Oregon is sort of a hybrid. It's really an indeterminate sentence. So although it – Oregon uses a determinate sentencing scheme and there's a minimum set sort of a determinate component of the dangerous offender sentence, that's long since been satisfied in this case. And so he would be eligible to be released. It sort of makes this a parole case. And I think you're going to hear a little of that actually in the next case. So it affects his – it may affect his eligibility for parole. Yes. There's a great likelihood it would. Yes. Has he completed the sentence on the sexual assault counts, too? Other than the – I mean, I understand he hasn't begun supervision yet, post-custody supervision, but has he completed the custodial portions on those? I believe that he has, yes. I'm not – So the only impact here of a reversal on the sexual abuse counts is that it would vacate the period of supervision associated with those counts? No. It would change his eligibility for release under that indeterminate dangerous offender scheme, which would be all that was in place. Because there's two fewer counts? Because those counts carried by far the greatest determinate prison time. They each carried 75 months. The producing pornography would have been a lot lower than 75 months. But for that indeterminate sort of tail that's put on it through the dangerous offender statute. Okay. Why don't we – is there any more questions? No. Okay. Why don't we hear from the State? May it please the Court, Caroline Alexander for Respondent. I'd like to talk a little bit about deference, because, again, it's in a very unique posture in this case. The Confrontation Clause claim is clearly procedurally defaulted. The State doesn't raise that now because we waived it at the trial level. But the claim is defaulted nonetheless. The – I don't understand that. What does that mean to us? I don't quite understand that statement. You didn't raise it, but it's defaulted. It's still defaulted. And it's in a posture of procedural default. Well, you told us you waived that objection, though. So what are we supposed to do? Well, you're not supposed to do anything in terms of the procedural default, but it explains the procedural posture that the case is in now. So the Court's absolutely right. He didn't raise a Confrontation Clause claim at the trial level. The trial judge ruled on the Oregon Evidence Code and the admissibility of the statements under the Oregon Evidence Code. You see, we have some sensitivity to the Constitution. Well, the Oregon Evidence Code says that's the language of OEC-803-18AB and is constitutionally required. So the statute builds into it that requirement in terms of indice of reliability. So that's where that language comes from. Was that section promulgated after the decision in Idaho v. Wright? I don't have the answer to that, Judge Burns. I could find that out. I honestly don't know. Probably not before Ohio v. Roberts, which goes back much further, and essentially Idaho v. Wright is just a progeny of Ohio v. Roberts. I'm not sure about that. So what's your argument on this? So it's in this procedural – you start out by saying it's in this procedural default fashion. I don't quite understand where you're going with this. Yes. This is where I'm going with it. So under those circumstances where the claim is defaulted, the State doesn't raise it, this Court could normally review it de nomo. The question whether the trial court's ruling is unreasonable or contrary to Idaho v. Wright. However, two reasons why that's not true in this case. First of all, the district court made a finding, and that finding is undisputed, that in fact the post-conviction court trial level in deciding the companion ineffectiveness claim found that there was no violation of the confrontation clause. That decision is entitled to deference. Which decision? Excuse me? The post-conviction court? The post-conviction court. The post-conviction court, in reviewing the ineffectiveness corresponding claim, made that decision. That decision is entitled to deference. But the underlying – well, if I were to object. Failure to object? In other words, in ruling that counsel wasn't ineffective, it necessarily had to say, but there was no violation of the confrontation clause, and so, therefore, there's no ineffectiveness. I don't remember, frankly, if I've – if it's something I've picked up on. Can you tell me where within the excerpts I would find what you're referring to? Actually, yes. It's ER-62 in footnote 5 of the magistrate judge's findings and recommendation. And the district court judge sort of explains the odd posture this case is in when he says, though it is within my discretion to – sui splanti to consider the issue whether the subject trial court error claim is procedurally defaulted, I decline to do so because of the post-conviction court's ruling. So that's my first point. My second point, I think, is more salient, and that is under 2254e1, the trial court's factual findings still are entitled to deference. And this is particularly true in its finding that victims' mother's report was reliable. I mean, we can talk all day about the inherent unreliability of her report and her testimony, but the fact is that that was hotly contested before the trial court. The trial court heard her testify, considered all of those issues, and rejected arguments that her report was so inherently reliable, unreliable, that it couldn't rely on that for the victim's statements. That misses the mark a little bit, though. Isn't the question before us not whether the mother's reporting of the statement was reliable, but whether the circumstances of the making of the statement itself by the little girl was reliable? That's correct, Your Honor. In fact, that's Swan v. Peterson. That's exactly right. And there is – I know there was some discussion of this conflating of corroboration for the Idaho v. Wright analysis and the Oregon hearsay exception, but there was at one point, at least, I found in the record where it did appear that the trial judge confused those things. He says, and this is at ER 486, he's talking again about these photographs. He says, but that – referring to photographs, but that's not insignificant in assessing the reliability of E.P. as an informer. It seems to me at that point that that does go over and do what the Petitioner contends, which is sort of bootstrap corroborative evidence that really the Supreme Court has said shouldn't have anything to do with the assessment of the reliability of making a statement. It seems like that statement, more than any other that I saw, does that. Well, I think that's right, Your Honor. I think I would concede absolutely that that's what the trial court did, because that's what the evidence rule requires it to do. Well, no, it's more than that, though. He's now taking – as I read this statement, he's now taking the photos and saying that corroborates the reliability of the report being made by the little girl. Idaho v. Wright says you can't do that. You can't bootstrap other evidence and bring it in and say, well, for example, a rape exam confirmed there was a rape, and so that makes the reporting of the rape reliable. That's not a proper analysis. And it does appear that at least at one point there was either some confusion or misstatement on the part of the trial court as to keeping those things separate. Do you acknowledge that? Well, not completely, Your Honor. I'm not sure that that's exactly what the trial court did, because I think if you go back and look at the trial court's factual findings, and granted, the trial court goes on forever, there's pages and pages of its ruling. When you parse all of that out, I think that the court can take that corroboration and remove it, because obviously, Idaho v. Wright, you can't do that. Look at the rest of the factual findings by the trial court, which are all on page 25 of the red brief, and just simply see, is that sufficient for Idaho v. Wright? Well, that might be. I don't know. I don't know. You know, it would seem to be that what the trial court did here was contrary to the methodology laid out in Idaho v. Wright. I don't know how you can separate it for purposes of analyzing Idaho v. Wright and whether it's consistent. It might work with respect to the second, you know, when you get to Brecht. Certainly. Certainly. When you get to Brecht. Certainly. Well, yes, I think this Court could come to that conclusion. I don't think that under AEDPA, that's the right conclusion, because, again, under AEDPA, the trial court need not even be aware of the controlling Supreme Court precedent. So if, in fact, you're able to remove that corroboration, and, you know, I do have a disagreement with counsel about what the record shows. The trial court didn't rely on the medical evidence as in determining that the statements were reliable. What the courts did and what the court did was said the medical evidence doesn't establish attempted rape. I'm going to acquit him on that. That's all it did. But nonetheless, harmless error, I'd like to speak to that for just a minute. I think that's, again, that's very important. You certainly can rely on that physical and medical evidence in a harmless error analysis. You can't use it for other purposes, but you can use it for this purpose, especially when there's no evidence that there was any other perpetrator that had access to this child. Petitioner documented his own physical contact with the child. And regarding the photographs during the medical exam, when the camera clicked and the other evidence. And then you look at all the other evidence. Yes, exactly. Exactly so. So you can consider that when the camera. When you say consider that, what are you talking about? What does that refer to? Harmless error. Harmless error. No, that's true. But I'm so if you take out the young girl's statements that the jury, that the judge heard. Only the statements to her mother. Yes. If you take that out. Okay. What's left? What's left? There is the statements during the medical examination. I remember when that man did that to me. And again, it was when the camera clicked and the person doing the examination had her fingers on her genitals. And I disagree with counsel that it was only in relation to the camera, because on page 284 of the record, the district attorney and the trial court are having a discussion about that. And the district attorney says, well, you can't parse those two things out. You can't compartmentalize them, the camera and the touching. And the trial court said, I agree. So it was the combination, and that's what the record shows, of the touching and the camera clicking that prompted the child to say, I remember when that man did that to me. She also made statements – well, no, I take that back. They were not statements. They were not statements. When the detective took her picture, she pointed to a picture of Petitioner on the table, and in response to the detective's questions, where did you learn to say cheese? But that doesn't go to the sexual abuse counts, right? The prosecutor was – But it goes to identity. It goes to identity. But that's not – he doesn't contend at this point that he had no contact with her. He acknowledged that. What you have to prove, it seems to me, if we go through Harmless Error, take out the statements that she made to the mother, assuming that that's error, you'd have to prove that there was some touching that occurred. Well, yes. And that's my point about the statements during the medical exam. Okay. But I mean, that she said the man taught her how to say cheese, that doesn't go to this issue of touching. No. That goes to identity. So you have the victim identifying him on two occasions. You have her statements during the medical exam during touching. I remember when that man did that to me. The photographs show her on two different occasions in different dresses. There's the medical exam, which is abnormal and shows sexual abuse of some kind. Did the – you said the trial judge acquitted on the attempted rape count? Yes. Under Oregon law, does that require penetration by the – by genitals rather than digital penetration? Yes. Yes, Your Honor. So in other words, what the trial court said was, look, from the statements, I can't tell if the child is talking about vaginal penetration or anal penetration. Under Oregon law, vaginal penetration is rape, anal penetration is sodomy or sexual abuse. And so because he couldn't tell the difference, wasn't sure that the child wasn't confused about that, acquitted on the attempted rape, but did establish that there were two occasions, and that's how it's played in the indictment of touching with sexual abuse. I see my time is up. Yes. Other questions? Thank you. A minute on this one. You've been very generous. Thank you. Just touching on the point that she was alluding to we disagree about, the Court made two different findings about the sort of medical evidence. And the findings that relate to corroboration are at 282 and 83 in the – where he let the hearsay in. So I'll direct you to that. It's peculiar that we're talking about sort of Ohio v. Roberts, which has been overruled, but Crawford comes later, so we are. Reviewing that opinion yesterday, I'd like to suggest the Court might look to 70 and 71 of that case, where the Supreme Court's talking about why the examination at the preliminary hearing was okay, and notes that counsel's questioning comported with the principal purposes of cross-examination to challenge, and then it enumerates essentially the veracity, the perception, and the ability to express what happened. In reading that last night, it struck me, confrontation, what questions would I ask about the Statement, about how she felt when her mother told her these things, about her mother not accepting that nothing happened. Thank you for the Court's time. Okay. Thank you. Matter submitted. But we have another case involving Mr. Huff.
judges: Burns, Paez, Clifton